IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ANTHONY SCOTT,<br><br>Plaintiff,<br><br>vs.<br><br>BILLINGS POLICE DEPARTMENT;<br>STEVE HALLAM; SETH FOSTER;<br>DAVID FIREBAUGH; KRAMER;<br>and NICK LAM,<br><br>Defendants. | Cause No. CV 18-89-BLG-DLC-JCL<br><br>FINDINGS AND<br>RECOMMENDATIONS OF U.S.<br>MAGISTRATE JUDGE |

Plaintiff Scott filed this action on May 22, 2018. The controlling pleading is Scott's amended complaint, filed on September 28, 2018 (Doc. 53). It names the defendants identified in the caption above. Scott alleges excessive force, unlawful search and arrest, and state-law claims including defamation and infliction of emotional distress. These claims arise from an encounter between Scott and officers of the Billings Police Department on January 17, 2018.

Several motions are pending. Four issues must be addressed: (A) whether a municipal entity or the Billings Police Department is a party; (B) whether there is a viable claim of excessive force; (C) whether there is a viable claim of unlawful search and/or arrest; and (D) whether this Court should exercise supplemental jurisdiction over any state-law claims.

1

## A. Defendant Billings Police Department

In his original complaint, Scott "checked the box for 'official capacity' under each of the named Defendants," that is, the four individual police officers he named. *See* Order (Doc. 7) at 5; *see also* Compl. (Doc. 5) at 4–5 (naming Officers Hallam, Froster, Firebaugh, and Tuss). The Court advised Scott that checking the "official capacity" box meant he had sued the entity the officers represent, not the officers themselves. The Court then said:

> Such a suit is not a suit against the official personally, for the real party in interest is the entity. There is no longer a need to bring official-capacity actions against local government officials, [because] local government units can be sued directly for damages and injunctive or declaratory relief.
> As Mr. Scott has not raised *any* claims against *the City of Billings*, the Court will assume for purposes of this Order that Mr. Scott intended to name the *individuals* as defendants in their *personal* capacity. Should he wish to bring a claim against *the City of Billings*, he must amend his Complaint.

Order (Doc. 7) at 5 (emphases added) (internal quotation marks and citations omitted). The Court recommended that the Billings Police Department be dismissed, *see* Findings and Recommendation (Doc. 7) at 13 ¶ 1, and on September 19, 2018, it was, *see* Order (Doc. 48) at 2.

Scott filed an amended complaint on September 28, 2018. Again, he named the Billings Police Department as a defendant in the caption. *See* Am. Compl. (Doc. 53) at 1. As in his original complaint, his amended complaint did not name the Billings Police Department in the section of the pleading where he was

2

supposed to provide certain "information . . . for each defendant named in the complaint," even though the preprinted form advised him to "[m]ake sure that the defendant(s) listed below are identical to those contained in the above caption." *See* Am. Compl. at 3 ¶ I(B); *see also* Compl. (Doc. 5) at 4–5 ¶ I(B) (same). He did not accuse the Billings Police Department of anything and did not seek any form of relief against it. *See* Am. Compl. (Doc. 53) at 4–5, 6, 10–16. Under each of the defendants he named, he checked the box for "individual capacity." *See* Am. Compl. at 3–4 ¶ I(B) (naming Officers Hallam, Foster, Firebaugh, Kramer, and Lam).

The Billings Police Department has not been served, *see* Order and Findings and Recommendation (Doc. 7) at 11 ¶ 3, 13 ¶ 1; Rule 4 Notice (Doc. 7) at 15, and should not be a party to this action at all. But the Department made an appearance through counsel by moving for dismissal. With this appearance, counsel waived any objection to insufficient process or insufficient service of process. *See* Fed. R. Civ. P. 12(g)(2). The fact the Court did not serve the Department is therefore moot. Counsel's appearance also seems to concede the Billings Police Department is an entity capable of being sued. *But see* Mont. Code Ann. § 7-1-4124(2) (1979) (providing that municipality has power to "sue and be sued"); Mont. Code Ann. tit. 7, ch. 32, part 41 (not addressing municipal police force power to sue or be sued); *cf. State of Montana v. District Court of the Thirteenth Jud. Dist.*, 550 P.2d 382,

385 (Mont. 1976). The Billings Police Department is now a party to this action.

Scott responded to the Department's motion to dismiss by stating that he did not receive a copy of it. He asks the Court to inform him of any written response he should make. *See* Mot. for Notice (Doc. 92) at 2, 3. He also asks the Court to "correct any error in the misunderstanding of personal, official capacity in the complaint." Mot. to Correct (Doc. 90) at 1.

These motions are properly construed as motions for leave to amend the amended complaint. Courts must briefly explain to *pro se* prisoner litigants any deficiencies that may be cured by amendment, *see Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012), but they "need not provide great detail or . . . act as legal advisors" to the plaintiff, *Noll v. Carlson*, 809 F.2d 1446, 1448–49 (9th Cir. 1987).[1] The Court provided the required guidance in the Order of July 11, 2018 (Doc. 7). Scott was advised he had not "raised any claims against the City of Billings" and that he could name the City by amending his complaint. When he amended his complaint, he did not name the City of Billings. Saying anything more than what has already said, or extending another opportunity to amend, would cross the line into impermissible legal advice and advocacy. Scott's

---

[1] This decision is currently flagged in one electronic database as "superseded by statute." But the case cited, *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (en banc), reversed the panel's and district court's decision holding that the Prison Litigation Reform Act overruled cases, like *Noll*, which required a district court to provide a pro se litigant with an opportunity to amend. *See Lopez*, 203 F.3d at 1125–26, 1129–30. *Noll* remains good law.

4

requests to amend or correct should be denied.

The Billings Police Department, however, remains a party to the case. Whether Scott states a claim on which relief may be granted is addressed in Parts B and C below.[2]

## B. Excessive Force

For two reasons, the Court will recommend dismissal of Scott's claim that his arrest was effected by use of excessive force, contrary to the Fourth Amendment.

### 1. Amended Complaint

First, Scott's original complaint contained some allegations of excessive force. See Compl. (Doc. 5) at 6 ¶ III(A)(1), 7 ¶ IV, 10–11, 13. His amended complaint named a new defendant, Lam, whom Scott claims was responsible for his physical custody, but the amended complaint does not allege any fact relevant to use of excessive force. See Am. Compl. (Doc. 53) at 1–16.

### 2. WatchGuard Video

Second, evidence in the record, to which Scott had an opportunity to respond, see Rand Notice (Doc. 24), "quite clearly contradicts" the allegations of

---

[2] Scott withdrew his claims of false imprisonment, property loss, property damage, and racial discrimination. See Pl. Mot. for Summary Judgment (Doc. 62) at 4; Stipulation (Doc. 71); Defs. Resp. to Pl. Mot. for Summary Judgment (Doc. 82) at 9; Fed. R. Civ. P. 41(a)(1)(A)(ii). They are not addressed.

5

excessive force in Scott's original complaint. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). On August 31, 2018, Defendants Hallam, Foster, Firebaugh, and Tuss moved for summary judgment by arguing that they were not involved in Scott's handcuffing. They said Officer Lam was responsible. *See, e.g.*, Defs. Statement of Undisputed Facts (Doc. 27) at 4 ¶ 17; Lam Aff. (Doc. 27-5) at 3–5 ¶¶ 7–12; *see also* Pl. Notice (Doc. 12) at 2 (referring to video). In support of their motion, they submitted a video and audio recording taken from the back of the patrol car where Scott was detained.

Scott has argued, in response to a defense motion for summary judgment, that the use of *any* force was excessive because the arrest was unlawful and no force was reasonably necessary. *See* Resp. to Defs. Mot. for Summary Judgment (Doc. 37) at 1–5; *Graham v. Connor*, 490 U.S. 386, 396–99 (1989). This claim stands or falls with Scott's claim of unlawful arrest. That claim is addressed below, so there is no need to address this aspect of his excessive force claim.

The question, therefore, is whether Scott was subjected to more pain or discomfort than was reasonable under the circumstances. As Scott says, Lam knew the handcuffs and the seat in the truck would not be comfortable, *see* Pl. Notice (Doc. 12) at 2; WatchGuard Video (Doc. 27-6) at 14:55–17:00, but the discomfort normally incurred upon being handcuffed is not excessive force.

After Scott had been handcuffed for about fifteen minutes, he had,

understandably, had enough. *See* WatchGuard Video at 31:18. He banged on the cage to attract Lam's attention. *See id.* at 31:42. Lam responded in less than a minute. *See id.* at 32:25. He adjusted the cuffs, and Scott said he was "good." *See id.* at 32:37–33:55; *see also* Lam Aff. (Doc. 27-5) at 3 ¶¶ 9–11. Scott's hands remained cuffed behind his back as he sat in the truck for about four more minutes. Then the cuffs were removed. *See id.* at 33:55–37:00. Scott remained in the back of the truck, uncuffed, for almost an hour. *See id.* at 37:00–1:33:50. Lam kept an eye on him, occasionally asking whether he was warm enough and opening or shutting the door as Scott asked. Scott sat calmly throughout this time. Eventually, an officer advised him he was going to be charged and asked him to step out of the vehicle to be cuffed behind his back, once again, for transport to the jail. As Scott stepped out of the truck, he moved his hands behind his back, again showing that he was not cuffed for most of the time he sat in the vehicle. *See id.* at 1:31:20–1:35:25.

Scott plainly did not "remain[] in handcuffs while they searched his home." Compl. (Doc. 5) at 11. He was cuffed for a total of about 17 minutes. When he "bang[ed] on the cage" to let someone know he was uncomfortable, he received both prompt amelioration and, less than five minutes later, removal of the handcuffs. He remained uncuffed for about an hour.

No reasonable juror could find in Scott's favor on a claim of excessive force.

7

*See Scott*, 550 U.S. at 378–80; Fed. R. Civ. P. 56(c). The defendants are entitled to judgment as a matter of law.

### C. Unlawful Search and/or Arrest

#### 1. Undisputed Facts

On January 17, 2018, the owner of the Habitat for Humanity ReStore in Billings agreed to allow police officers to enter the store and parking lot to conduct canine sniffs around the exterior of employees' lockers and vehicles. An employee meeting was held while the K-9 units worked. K-9 Kooko alerted at Scott's vehicle. *See* Firebaugh Aff. (Doc. 27-2) at 2 ¶ 5. Scott was asked to consent to a search of the vehicle. He did. In the glove compartment, officers found a substance that field-tested positive for cocaine. *See* Hallam Aff. (Doc. 27-1) at 3 ¶ 10. The officers then asked Scott to consent to a search of his home. He did. They found prescription drugs and a pipe containing residue that field-tested positive for methamphetamine. *See, e.g.*, Scott's Mot. to Suppress, *State v. Scott*, No. DC 18-89 (Mont. 13th Jud. Dist. Court June 13, 2018) (Pl. Resp. to Defs. Mot. for Summary Judgment Ex. 2 (Doc. 86-1) at 2–3).

Laboratory testing later indicated the substance found in Scott's glove compartment was *not* cocaine.[3] *See* Order Granting Mot. to Suppress at 3 ¶ 15,

---

[3] Defendants "deny" this fact "as it is written" rather than stating whether the *fact* asserted is disputed or undisputed, as the local rule requires. *See* D. Mont. L.R. 56.1(b)(1)(A) (Dec. 1, 2017). They are correct that Scott failed to comply with L.R. 56.1(a)(2). *See also* Fed.

*Scott*, No. DC 18-89 (Mont. 13th Jud. Dist. Court Sept. 6, 2018) (Am. Compl. Ex. 6 (Doc. 53-1 at 23)); Letter from Scott's Attorney at 1 (Am. Compl. Ex. 3 (Doc. 53-1 at 14)); Pl. Resp. to Defs. Mot. for Summary Judgment (Doc. 86) at 2 ¶ 1.

Charged with possession of drugs and paraphernalia in state court, Scott moved to suppress the fruits of the searches carried out on January 17. According to the state court's decision, two informants whose statements led police to the Habitat for Humanity ReStore in mid-January 2018 had not previously been proven reliable, and their statements were uncorroborated and stale. Although officers knew Scott had participated in a couple of controlled buys in September 2017, they did not learn anything more about Scott before they conducted the canine sniff around his vehicle in January 2018.

Montana law requires particularized suspicion to support a canine sniff. *See State v. Tackitt*, 2003 MT 81 ¶ 31. The state court ruled that the canine sniff was not supported by particularized suspicion and granted Scott's motion to suppress. *See generally* Order Granting Mot. to Suppress at 5–6 (Am. Compl. Ex. 6 (Doc. 53-1 at 25–26)). As the first canine sniff was the foundation of Scott's decisions to consent to searches of his vehicle and home, the state court suppressed all fruits of the January 17 searches. The state criminal charges were dismissed.

---

R. Civ. P. 56(c)(2). But Scott's contention is straightforward: a laboratory test found the substance was not cocaine. As Defendants did not dispute the fact or point to contrary evidence, *see* L.R. 56.1(b)(1)(A), (B), the fact is deemed admitted for purposes of the pending motions.

9

## 2. Analysis

The state court suppressed the evidence against Scott because it was obtained in violation of *state* law. But to proceed under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States," *Naffe v. Frey*, 789 F.3d 1030,1035–26 (9th Cir. 2015) (internal brackets and number omitted) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). Violation of a right secured by state law is not sufficient.

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. A canine sniff is not a "search," *see United States v. Place*, 462 U.S. 696, 707 (1983), so an officer's use of a drug-sniffing dog is not unreasonable, *see United States v. Ibarra*, 345 F.3d 711, 715 (9th Cir. 2003). Scott's vehicle was parked and he was not in it. The canine sniff did not cause or prolong a detention. *See, e.g., Rodriguez v. United States*, __ U.S. __, 135 S. Ct. 1609, 1612 (2015); *Illinois v. Caballes*, 543 U.S. 405, 409–10 (2005); *Ibarra*, 345 F.3d at 715. The canine sniff was not objectionable under federal law.

When advised of Kooko's alert, Scott consented to a search of his vehicle. He signed a form stating that he did "not have to give these officers permission to search," and he agreed he consented "without any threats or pressures against me." Consent to Search at 1 (Defs. Statement of Undisputed Facts (Doc. 80-1 at 2)).

Scott challenges the voluntariness of his consent, claiming that "K-9 Kooko

. . . was used to falsely alert and to gain an illegal consent search." Pl. Statement of Undisputed Facts (Doc. 63) at 2 ¶ 2. This statement is one inference that may be drawn from the fact that laboratory testing showed the substance in Scott's glove compartment was not cocaine; after all, if it was not cocaine, presumably Kooko would not alert to it. But it is equally reasonable to draw other inferences. For instance, maybe the laboratory test was inaccurate, or maybe the dog alerted to a trace amount of something the officers did not locate in their subsequent search. Inferences may be the basis for investigation or discovery that may or may not lead to admissible, probative evidence, but inferences are not evidence.

To avoid summary judgment, Scott must point to potentially admissible evidence showing a violation of his rights—for example, a witness statement or video footage or documentation showing that Kooko was not properly trained or did not actually alert—or he must show "specified reasons" why he "cannot present facts essential to justify [his] position." *See* Fed. R. Civ. P. 56(c)(1), (d); *see also* Am. Compl. (Doc. 53) at 14. Scott has not done either of these things. As a result, the evidence before the Court shows only that the canine sniff was unobjectionable under federal law, Scott consented to a search of his vehicle, Kooko's alert and the positive field test gave the officers probable cause to arrest Scott for possessing cocaine, and Scott also consented to a search of his home. There was no Fourth Amendment violation. The defendants are entitled to

judgment as a matter of law.

### D. Remaining State Law Claims

The Court does not decide the issue, but it is possible Scott's amended complaint might be construed to allege defamation and infliction of emotional distress. *See* Am. Compl. (Doc. 53) at 13.

Defendants are correct that Scott has not produced evidence to support these claims. In fact, he has not even pled their elements adequately. He proceeded here as if his state-law claims follow logically from his claims of illegal arrest and search and excessive force.

Although the claims for illegal search and arrest fail under the Fourth Amendment, the state court found merit in Scott's motion to suppress. Scott might be able to maintain a state-law claim against one or more of these defendants or a different defendant. This Court should not make that decision. Scott's state-law claims belong in state court. Assuming the federal claims are dismissed, supplemental jurisdiction over the state law claims should be declined, both because they are novel and because original jurisdiction will no longer exist. *See* 28 U.S.C. § 1367(c)(1), (3); *International Longshore and Warehouse Union v. Port of Portland*, 844 F.3d 864, 865–66 & n.1 (9th Cir. 2016).

The officer defendants argue that Scott's state law claims are barred under Mont. Code Ann. § 2-9-305. But the Billings Police Department does not fit the

statutory definition of a "political subdivision" or "governmental entity." *See* Mont. Code Ann. § 2-9-101(3), (5). Scott has not recovered anything from the City of Billings. *See Story v. City of Bozeman*, 856 P.2d 202, 209–10 (Mont. 1993), *overruled on other grounds by Arrowhead Sch. Dist. v. Klyap*, 79 P.3d 250, 264 ¶ 54 (Mont. 2003). And no one has brought the City into this case as a party. *See* Mont. Code Ann. § 2-9-305(4). Mont. Code Ann. § 2-9-305 does not affect Scott's claims in this action.

Based on the foregoing, the Court enters the following:

### RECOMMENDATIONS

1. The Billings Police Department's motion to dismiss for failure to state a claim (Doc. 59) should be GRANTED.

2. The individual officers' motion for summary judgment (Doc. 81) should be GRANTED as to Scott's federal claims and DENIED as to state law claims.

3. Plaintiff Scott's motions for summary judgment and motions to amend or correct his pleadings (Docs. 62, 64, 90) should be DENIED.

4. All claims of excessive force and unlawful search or arrest should be DISMISSED WITH PREJUDICE.

5. The Court should DECLINE supplemental jurisdiction and DISMISS WITHOUT PREJUDICE all state-law claims.

6. All claims having been resolved, the clerk should be directed to enter

judgment by separate document.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may object to this Findings and Recommendation within 14 days. *See* 28 U.S.C. § 636(b)(1).[4] Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Scott must immediately advise the Court of any change in his mailing address.</u> Failure to do so may result in dismissal of this action without notice to him.

DATED this 17th day of December, 2018.

Jeremiah C. Lynch
United States Magistrate Judge

---

[4] This deadline allows a party to act within 14 days after the Findings and Recommendation is "served." Federal Rule of Civil Procedure 6(d) allows three additional days after the period would otherwise expire.